The next case this morning is number 522-0328 Barrett v. Barrett. Arguing for the appellant Joshua Barrett, personal representative of the estate of David Barrett, deceased is Gregory Nybarger. Arguing for the appellee Bruce Barrett is Cara Wade. Each side will have 15 minutes for their argument. The appellant will also have five minutes for rebuttal. Please note only the clerk of the court is permitted to record these proceedings. Good morning, counsel. Good morning, judge. Mr. Nybarger, are you ready to proceed? I am, your honor. Then go right ahead. May it please the court. This case is about a surviving partner of a partnership who wants to enforce the specific provision of a partnership agreement while intentionally violating other provisions that serve as the foundation and bedrock for the agreement. On the one hand, the surviving partner Bruce Barrett took title and control of every asset of the partnership for himself and after doing so, now seeks to enforce one sentence of the partnership agreement that allows him to farm the deceased partner David Barrett's land under pre-existing oral farm leases. Yet on the other hand, Bruce Barrett refuses to comply with the purchase agreement's conditioned proceeding of paying the deceased partner's estate money for his interest in the partnership. In essence, your honor, Bruce Barrett wants to have his cake and eat it too. The trial court seized on the defendant's attempt to enforce the one sentence of the partnership agreement and ignored all the other foundational provisions. The trial court then even went so far as to conclude that based on that one sentence in the agreement, defendant had a quote, absolute right, close quote, to farm the deceased partner's land. The trial court then used that improper interpretation to satisfy each and every and under the de novo standard of review at issue for this court in interpreting the agreement, the preliminary injunction order should be overturned. Let me start with recognizing that the trial court did not even address our principal arguments on the controlling provisions of the underlying agreement, both the condition proceeding and the provision controlling the appointment of appraisers. Critically important is the language of the agreement that conditions the right of the surviving partner to carry on the business of the partnership as his own on that surviving partner's compliance with the terms for payment of the purchase price for the deceased partner's interest. That is article 9, section 5. The first sentence states it is the intent and purpose of this agreement upon the death of a partner and subject to the payment of the purchase price as herein provided that the surviving partner may continue the business as his own. The very next paragraph begins with the following sentence, the surviving partner shall be entitled to farm any land owned by the deceased partner at the time of his death for a term of five years upon the same terms and conditions as the ground was being farmed as of the date of death. Thus, section 5 is clear that the surviving partner's right to continue the business to farm the land is conditioned upon and subject to the compliance with the terms for payment of the purchase price. It's also undisputed in this case and agreed that the defendant here, Bruce Barrett, did not pay a single penny to the estate toward the purchase of David Barrett's partnership interest and as a result, the surviving partner cannot enforce any provision of the agreement, fail to meet the condition proceeding, let alone enforce the one sentence concerning farming of a deceased partner's land as contained in the very same section. Mr. Nybarger, is there any had been transferred out of the partnership that it was no longer partnership property? No, your honor, there's no dispute and the land that issue that we're talking about jointly owned land was in fact transferred out of the partnership years earlier. Then if Bruce had paid the $250,000 from the insurance or paid some other what would he been buying with what he'd been paying for when he paid money to the partnership agreement? The $250,000, your honor, is the starter for the purchase price of buying out David Barrett's interest in the partnership. What was left in the partnership? I guess that's my question. What was left in the partnership if the real estate had been transferred out? Gobs of money in accounts, grain, farm equipment, everything you would need to be a farmer in Illinois, Judge, including a franchise for a Pioneer dealership and other assets, all of which were taken by Mr. Bruce Barrett. Thank you. Yes, your honor. Now, Mr. Barrett argues that we can support the trial court's opinion because the intent and purpose language that I just read to you in paragraph one of section five doesn't apply to the right to farm the deceased partner's land because that's found in a different paragraph. Yeah. Paragraph two of the same section, in essence, arguing that because they're in different paragraphs, they don't apply. However, the intent and purpose language expressly states that is the intent and purpose of this agreement, the entire agreement, not of any particular paragraph or section. The appellee also argues that he has not breached the condition proceeding because it's not possible to make 10 annual installments within the five year term allowed for the farm tenancy. Right. But the defendant was not required to undertake the impossible feat of paying the full purchase price over 10 years before he could continue to governing the payment of the purchase price. So, again, it's undisputed that the purchase price for David's interest exceeds $250,000. The appellee admits as much on page 23 of the brief. And if the purchase price exceeds $250,000, then the surviving partner must deliver the $250,000 up front plus a promissory note for the balance of the full purchase price. That's article nine, section three, paragraph two. The surviving partner is also obligated to make the first installment payment under the note one year after the date of death of the deceased partner. That would be in January of 2022 in this case. And it is undisputed that the defendant, Bruce Barrett, did not pay any of the up front money, whether shortly after David Barrett's death or even before the first installment was due to be paid one year after David's death. Thus, the defendant failed to comply with article nine, section five, conditioned proceeding to make, quote, payment of the purchase price as herein provided. Said another way, there were multiple material breaches and failure to comply with following conditions proceeding. Failure to make any of the $250,000 payment, failure to provide a promissory note for the balance of the full purchase price over the $250,000, and failing to make the first installment payment under the required to make any payment for the purchase price because the estate failed to transfer title to the seed's partnership interest. Now, importantly, this argument was not made below. Nonetheless, the argument is red herring. The transfer of any title will be a futile act. We pointed this out in a reply brief on seven and eight. Importantly, upon David Barrett's death and under the Uniform Partnership Act in Illinois, he became disassociated with the partnership. And upon disassociation, his interest terminated. And all that remains is the purchase of his interest at a value provided either under the statute or under the applicable agreement if one exists. And here we have the latter. Thus, there was no interest to transfer. And we know that to be the case because the defendant here has already taken title and control of every partnership asset. If that wasn't the case, Bruce Barrett would not have title to the underlying farm leases, the farm equipment, and the accounts, all the things that he took and used to carry on the partnership business. Similarly, the preliminary injunction ignores the uncontested evidence demonstrating that defendants materially, that defendant materially breached the provision for the appointment of appraisers. What do I mean by that? That's article nine in section two. I'll tell you to come up with the purchase price. Article nine, section two says that the purchase price of the interest of the deceased partner shall be in an amount determined as follows. The physical assets of the partnership, both real and personal, shall be appraised by three appraisers. One selected by the surviving partner, one by the personal representative of the deceased partner, and then those two appraisers shall appoint the third. And here the uncontroverted evidence on this issue in the record is the affidavit of Joshua Burris. You can see that on pages C-115 to C-139. And that affidavit expressly states that he, as a representative of the estate, employed Mr. Roush to conduct an appraisal on behalf of the estate. That Mr. Roush then provided three names of additional appraisers that were sent to counsel for the defendant. And I'm sorry, I was talking about Josh Barrett did this on behalf of the estate. Mr. Roush then provided those three names of additional appraisers onto counsel and they were sent on to counsel for the defendant, yet no one responded to these three suggestions of appraisers presented by Mr. Roush. On the other hand, the defendant used a Mr. Knowles to prepare an appraisal. But importantly, Mr. Knowles refused to recommend a third appraiser. And that ends the inquiry under the partnership agreement. Mr. Knowles' refusal to participate in the appointment of a third appraiser was a material breach that prevented the third appraiser and the ultimate determination of a purchase price. And that's the McBride case, Your Honor. We cited on pages 26 and 27 of our opening brief. In McBride, the defendant delayed the valuation of the stock so the plaintiff could not request the amount of payment for his stock. The court determined that such delay in coming up with the valuation of the stock was a material breach of underlying agreement. And the same is true here. The defendant's appraiser refused to participate in the appointment and selection process for a third appraiser and that was required in the partnership agreement. And as a result of that material breach, no third appraiser has been appointed and no purchase price has been determined. And as a result of that material breach, Mr. Bruce Barrett cannot enforce the purchase agreement, including the provision allowing him to farm the deceased partner's land under pre-existing oral farm leases. And in addition to ignoring the foundational provisions of the purchase agreement, the preliminary injunction, also, Your Honor, violates the Uniform Partnership Act. Why do I say that? It impermissibly restricts the rights of a non-party. Under the act, a partnership agreement may not restrict the rights of a person other than a partner in a transferee of a partner's transferable interest. We cited the authority in our brief. But the preliminary injunction order has language that says the defendant is allowed to farm for the 2022 crop year, each parcel of land owned by the decedent, David Barrett, at the time of his death. The defendant then seizes on that language to say that it can farm any land, whether it was jointly owned or not, even the land that was owned jointly by David and Lee Barrett at the time of David's death. And defendant supports this argument by saying that Lee Barrett is a transferee of David's transferable partnership interest. Yet the defendant has failed to demonstrate how Lee Barrett was a transferee of any partnership interest, nor could she be as a widow. No partnership interest was transferable to begin with. No partnership interest was attempted to be transferred to Lee Barrett after death. And further, the jointly owned land, as we talked about earlier, Your Honor, was not partnership property. It had been removed from the partnership years prior. Defendant then shifts the argument to say, well, Lee Barrett signed the partnership agreement. But the Illinois Partnership Act requirements don't change if a non-party signs the partnership agreement. The law is the law, and the act says you cannot use a partnership agreement to bind a non-partner. And that's exactly what they're trying to do. Notably, Your Honor, the purchase agreement also addresses the farming of land owned solely by David at his death, not land jointly owned by David with others. And that is why the preliminary injunction is fatally flawed. Now, the purchase agreement's reference to the pre-existing oral leases doesn't save the oral farm leases. What do I mean by that? In Illinois, there's a requirement that farm leases for longer than one year must be in writing. And what the defendant says is that, hey, Illinois law says that a party may incorporate terms of an oral agreement into a written agreement by reference, and that's what happened here. The problem with that argument is that Illinois has very specific requirements that for farm leases longer than one year, they must be in writing, and the writings must include specific material terms, including but not limited to the amount of rent. And we cited the authority for this on pages 21 and 22 of our opening brief, yet defendant did not provide any writing to the trial court or this court that includes the term for the amount of rent. Indeed, defendant's counsel conceded that the parties did not have any of these required terms in writing. That's on the record of they were terminable at will. That's Illinois law, right? An oral farm lease can be terminated for any reason without cause, and that's exactly what happened here. Defendant then attempts to sidestep this important fact by claiming that the injunctive relief available from the courts is a way to prevent interference with the farm tenancy, and in support of that argument, defendant cites the 1954 case of Kubrick. The problem with Kubrick is that the tenant there was never provided written notice of termination, and the exact opposite is true in this case. Your Honor, I point you to the Pullum v. Evanston YMCA case. In that case, the court held that while it's possible for a plaintiff to be able to demonstrate that the trial below his eviction was unlawful, it's not the equivalent to demonstrating the, quote, certain and clearly ascertained right, close quote, required for an injunction, and that is the circumstance here. The oral leases were terminated, and the defendant does not have a clear right, despite the fact that he believes he might prevail at trial, that the eviction was unlawful. Because the oral leases were terminated, the preliminary injunction order also impermissibly changes the status quo. It puts it on its head, Your Honor. Why do I say that? The notice of termination of the farm lease were delivered and tendered in October of 2021, and the terminations became effective on February 28, 2022, yet the injunction motion was not filed for a month and a half after the terminations became effective. Thus, the status quo was that the leases had been terminated, and nothing had been planted, and under the Pullum case, it was improper for the court to try and affirmatively change the status quo and restore those terminated farm leases. Your Honor, I'll rely on the remainder of the arguments in my brief other than to say there are multiple material issues of contested fact that required this court to have a factual hearing, an evidentiary hearing, before it issued a preliminary injunction, and that did not occur. I specifically cited authority for this on pages 42 and 43 of our opening brief. There was no evidentiary hearing. Thank you, counsel. Before we move on to Ms. Way, Justice Moore or Justice Bond, do you have any questions at this point? No, I do not. Questions. Thank you. All right. Obviously, counsel, you'll have your opportunity for your rebuttal. Ms. Wade, are you prepared to move forward? I am, Your Honor. Good morning, I should say. May it please the court, counsel. We covered just a lot of topics during that 15 minute, so I will try to address most of what was raised by counsel. This has clearly been fully briefed to the tenth and ninth degree, so hopefully if we don't get to some of these topics, you'll be able to see them in the briefs. First of all, I would like to point out that my opposing counsel referred to the purchase price a whole bunch, and that's the problem in this case. It's that the parties cannot agree on a purchase price. What's interesting to me is that the act is that all alone and that, you know, he's done all these bad things and they don't take any kind of responsibility or recognize that their actions in this matter. In reality, there's not really bad guys here. I mean, they've attempted to sensationalize this to a point that's beyond ridiculousness, but in reality, we have two families that just can't agree on a purchase price. Both sides have reasons for that. It's not that one side is better than the other. It's that they just disagree. And in the meantime, while that's sorted, that's the ultimate dispute between these parties is to figure out the purchase price. And you'll see in the facts, there was a third brother who died before, and there was a prior purchase of his interest, so there's a course of conduct between the parties. And my client thought we'd follow that same course of conduct, and that's what he believes should be happening. And in the counter that Josh as the administrator of the estate is demanding terms and funds that he does not believe is required by the 2011 partnership agreement. And that's why we're, that's why the parties are fighting with one another, essentially. Now, I know it sounds simple, or maybe I'm oversimplifying, but the facts that concern this farming issue, the injunction order concerns the minor farming, the limited, I should say, farming issues, not minor, it's limited. And the facts relating to that farming issue are not disputed. They are not. I understand that they're trying to claim all these material breaches. Well, to the extent that those are considered material breaches, then the administrator has equally materially breached the contract, and everybody's performance is excused because they cannot agree to the ultimate conditional precedent, which is there has to be an agreed upon purchase price. What's interesting is they refer to the appraiser. That's a good example. They refer to the appraiser and they're claiming unreasonably that our client has not participated in appointing a third appraiser. Well, that's just not true. Look at the emails that they cite. You'll see there's an exchange between counsel for Josh and counsel for Bruce. They suggested these appraisers that are not in Illinois. They're national. Some of them didn't even have experience with farm equipment. And so we responded with a local appraiser. And then we got no response back for them. And because the attorney for Bruce did not receive a response, they retained Mr. Ecker, who is certified, or I should say, recommended by the ISBA. So it wasn't as if we're just getting some jumble off the street. So this idea that we haven't participated is false, but also it's just a good example that you know, they're spreading the facts only in their favor without taking any responsibility whatsoever for the actions that they've engaged in. So let's talk about some of the legal issues. So the main issue here with respect to the farming is we have the right to farm it. Article 9, section 5 specifically states that. Attorney opposing counsel read that. We're allowed to farm that. Now they're pointing to this idea that we've not paid any payments. And again, the reason why we haven't is because the parties haven't reached the purchase press. I don't understand how you can make a payment whenever you haven't agreed upon a price. But even still, if that's not the case, look at look at Article 3 of that same section. Is counsel's statement true that you have that you have not named the third arbitrator? No, it is not true. And like I said, if you look at the emails, Judge, you'll see that we did. We responded to the email. Would you point out where that would be in the record? Sure. Give me a moment, Judge. Sorry, I didn't have that specific that specific site right in front of me. But if you look at their the emails attached to their affidavit, Judge, you'll see C-137. We suggest an appraiser. And then you'll see there's never been there was not a response. This is a response to their email suggesting appraisers. And they're acting as if only the appraisers could participate in the name. Well, clearly, the attorneys have stepped in at that point. There's no prohibition that the representatives work with one another to come up with a third appraiser. And interesting of note, the reason why the agreement says that the two appraisers choose the third. Correct. And I'm getting that, Judge. The reason why our appraiser was not was reluctant to continue working with this case is because attorney for the state called him and insulted him and said that he was not qualified to provide an opinion. The same attorney routinely use this appraiser as an expert in his farm cases. So that's why he was personally insulted. Are you talking about Mr. Niebarger? No, I'm talking about Mr. Ray. Oh, okay. And Judge, you know, I didn't get into all these facts in the TRO motion and the motion for preliminary injunction because again, they don't impact this farming issue. It's a limited issue of are we allowed to maintain the status quo and allow Bruce to continue farm this ground while this dispute is considered. And that's exactly what the trial court considered when she entered the injunction order. Because the status quo, unlike what Mr. Niebarger is proposing, was that Bruce farmed the ground. The partnership farmed it for years and years and years, was sent to an oral lease. And then once David died, it allowed the surviving partner, Bruce, to farm the land for five years. And the parties can comply with that for the first year following the death. The status quo was Bruce farming. Now the notices to terminate, they argued, were effective. They were not effective. Article 9, Section 5 of the agreement does not allow for termination. It's a five-year term. And as he pointed out, it does incorporate the terms of the oral lease that immediately preceded the death. That's because they wanted fluidity. They understood they signed this agreement 10 years prior. Routinely, they would change the cash rent that was paid to each partner because the partnership also farmed Bruce's ground. And so they wanted to be able to allow for fluidity. And that's exactly what happened here. And as long as the terms are ascertainable, you can incorporate them. That's the law. And they were ascertainable. You know how we know? They operated under those terms for the 2021 farm year as Bruce farmed it. That was the A big portion of the land was individually held by David. And the language of Section 5 talks about being allowed to farm the death in which he had an interest, being able to farm the ground in which the decedent had an interest at the time of his death. That includes jointly held ground. That doesn't just include individually held ground. As far as this idea that somehow he ceased being a partner upon his death, that's not what the partnership agreement contemplates. It clearly contemplates transferring the title to the surviving partner, allowing the surviving partner to continue to operate, allowing them to farm this ground for five years to help finance the 10-year buyouts. There's lots of conditioned precedents here. But the main one is that you had to agree on a purchase price. And this idea that he hasn't made a payment, there were offers made. And again, I didn't provide all the facts relating to the background of the negotiation of history between the parties, because that's not what's at issue here. Those are controverted facts that relate to the merits of this case. And those will be decided at a later day. But until that time, the status quo should be maintained. And that's exactly what Judge Fahey did. She maintained the status quo. So I want to point out this idea that the partnership agreement didn't turn the oral leases into something more than an oral lease, was rejected by the trial court, and it should similarly be rejected by the appellate court. It would gut the meaning. This idea that there was still an oral lease and they could terminate it based on Illinois law, just for any reason, it simply would render the provision completely meaningless. It became a five-year term upon the death of the partner. And they did that for a reason. It was to help finance the buyout. The whole concept is they wanted the partnership to survive. There's other generations involved here. And the idea was the next generation would become a part of the partnership as well. And so that's why it was important for the partnership to survive. Now, it seems like the goal of the estate is to end the partnership. But that's not what the goal of the partnership agreement was. So this idea that the interest had to be transferred, that meant something because they formed a different process than what the partnership act may or may not require. Ms. Wade, what about the argument that the partnership agreement is contrary to the Illinois Partnership Act? The 805 IOCS 206-103-B9 says you can't obligate nonpartners or transfer to a five-year, anything longer than one year. Judge, I would say that it's not contrary to the partnership act. Lee Barrett is a transferee. I don't know why they're acting as if she's not. She signed the partnership agreement because it was recognized that she owned land. She is a party to the partnership agreement. She owned land. They understood that. They wanted to make sure that the spouses were on board and had notice, which they did. A transferee, I mean, she was, she stands to inherit from David. And so this idea that we're trying to bind her improperly is nonsense. She understood the terms. If you look at the agreement, Judge, it says at the end that the reason they had the spouses sign was to make sure they understood and agreed to the terms. And they did. They signed it. Their wives have also signed this agreement to show their knowledge and acquiescence in the terms thereof. So there's the reason why they did it in the way they did it. So it's not contrary to the partnership act. And the idea that she, that Lee, well, I would argue that they did not raise this in the trial court. But the argument that Lee is not bound is, I wholly disagree with that. She signed the contract. I also like to point out that they've tried to argue that we've somehow are time barred from raising our counterclaim or this motion. That's been addressed really well in the brief, but I will point out that this claim was really against the administrator of the estate, not against the estate itself. So the six month timeframe of the probate act does not apply. In fact, there's no way it can apply because we didn't receive the notices of termination for the lease until after the six month timeframe had expired. So it would have been a possibility. But also there's 13-207 of the codicil procedure that specifically states that even if it was time barred, which it's not, we can still assert the counterclaim because we've been sued by the estate in the Rice case. I do want to briefly touch about the McBride case. And distinguish that a bit. The McBride case, there was one party that was just wholly refusing to participate in valuing the partnership. That is not what has happened here. Each party has taken steps and tried to evaluate this partnership. It's not that one party has been doing everything and the other party has not done anything. We've been taking steps, immediately took steps. We just can't agree. They're asking for things that we don't believe are required by the partnership agreement. So it's not a situation where one party's done what they're supposed to and the other party has not. That's just simply not the case. And to the extent, again, that one party has breached the agreement, they both have. And I think the performance is excused with respect to payment because we're claiming that because of them we can't pay and they're claiming because of us. But I guess the important point that I So it can't be a situation where Bruce is bound by the terms, but then Josh isn't. It can't be a situation where Bruce has to pay them whatever they think in accordance with the partnership agreement, but then they don't have to allow us to farm. It's either all or nothing. And so I point out to the court that this is going to get paid. This is going to happen. As soon as the trial court or jury determines the purchase price, it's going to be paid. That's going to and say that only this applies but not this. And to the extent that payment hasn't been made is because the parties haven't agreed on the purchase price. So I would advise the court or I would request the court to uphold the injunction order. The court went through and made the correct determination. The status quo was that Bruce farmed the land. He should be allowed to Does anybody have any questions? Thank you, counsel, Justice Vaughn or Justice Moore. No more questions. And at a minimum, wasn't the surviving partner to pay the life insurance proceeds to the other partner? And it hasn't been done? Well, Judge, I it's hard for me to answer that question, because you don't have these facts before you. The time that's interesting, they keep acting as if the timing that's set is not set. It just said proceeds and reality judge, the partners had ceased having the life insurance upon agreement. Actually, David was in charge of that. He decided not to pay the premiums because they were too high and there was enough cash. I think the opposing counsel there was enough cash in the partnership account to pay those. I can tell you that offers were made to pay and were refused. And that's all I can really say about that. Thank you. Anything else, Justice Vaughn? No, thank you. Well, thank you, Miss Wade. Mr. Nybarger, any rebuttal? You're on mute. Still on mute. Better now. Go right ahead. If it was my wife, she would have kept me on mute. So thank you for your patience. Let me go back and talk about a few things. The problem with this in preliminary injunction order is that the evidence is uncontroverted because the estate is the only one who presented real evidence, affidavits and supporting documentation. And all the other side did, all the defendant did was support through mere conclusions and argument. And that's all you get today, right? How many times did you hear today? These facts are not before you. I can tell you that offers were made, but there's no evidence of that, Judge. Zero. And isn't that critically important here? Isn't that one of the reasons why a preliminary injunction hearing should have been held, an evidentiary hearing? You don't have any evidence presented by the other side. It was all presented by the estate. It's all argument. And that's why it's important. And there was a great question about where's the evidence? Because it wasn't provided. Even we go to some of the critical issues. For example, the lawyer on the other side says the estate, some lawyer for the estate called an insulted appraiser knolls. Again, no evidence in the record. You won't find it anywhere. And that's exactly what happened at the trial court. These arguments were accepted as fact by the trial judge. And then the trial court judge disregarded the uncontroverted evidence submitted by the estate. And then recognizing that problem relied on one sentence. Let me just repeat that for the panel relied on one sentence in the partnership agreement to say, well, there's an absolute right to fine. That's how we get here. That doesn't stand, especially for such an extreme remedy of a preliminary injunction. She talked about the third appraiser's judge. Let me just back up on that. The third that the appraiser, Mr. Knowles, who was hired by the surviving partner, never participated, never provided the names. We provided the names. There's no response. Later, the defendant provides three names and we respond. This is in the record. And two of the people that were provided weren't licensed appraisers. And one wouldn't even respond to inquiries. So this gets pointed out again to the surviving partner's counsel. And all they do is throw back the name of a Mr. Ecker. That's the third appraiser they want to say to use. But no one agreed on that. The estate certainly didn't agree on that appraiser, nor did the estate have time. And this is in the record. The defendant conveniently leaves out the fact that the respond with the estate's agreement or disagreement with the appraiser because the defendant just went ahead and had Mr. Go out and do the liquidation appraisal. That's not what the agreement requires. And I'll end your honor on this important note. Let's go back to what the partnership agreement says. If the price exceeds $250,000, then the surviving partner is required to make that $250,000 upfront payment. And then a year after the death, so in January of 2022, the surviving partner is required to present the note in a first installment payment. None of that ever occurred. Everybody here understands and agrees that the purchase price was in excess of $250,000, but it's starve out the widow, it's starve out the estate. And you just heard counsel admit to you. Now there wasn't life insurance because there was enough cash in the bank to make the payment, but it was never made. And there's no excuse for not making the complying with the agreement and making the upfront payment. None whatsoever that has ever been provided to you. No excuse has been presented by evidence. And the trial court didn't even consider the language in the agreement. For all these reasons, including the fact that the preliminary injunction is such an extreme remedy, this injunction ought to be overturned. Thank you again for all of your time and patience. Well, thank you, counsel. Justice Moore or Justice Vaughn, any questions before we end this case? No questions. I have one other question. Do you believe the failure to conduct an evidentiary hearing alone is grounds for reversal? Yes, Your Honor, I do. Because there were contested material facts, as you've heard time and time again, just in the argument of counsel. Yes, there should have been an evidentiary hearing. One wasn't conducted. Instead, the judge just chose whatever the argument was of counsel over the uncontroverted evidence. Yes, Judge, I do believe that in and of itself is a basis for reversal. Anything else, Justice Vaughn? No, thank you. Well, counsel, obviously we will take matter under advisement, and we will issue an order in due course. We hope you all have a great day.